**DISSENT and Opinion Filed December 28, 2021**



In The
# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-20-00071-CV

### LENDINGHOME FUNDING CORPORATION, Appellant
### V.
### TUESDAY REAL ESTATE, LLC, KEVIN MILLER, HARVA DALE MILLER, AND ROXANE L. MILLER, Appellees

**On Appeal from the 134th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-18-00266**

## DISSENTING OPINION
Opinion by Justice Schenck

Because Kevin Miller ("Kevin") held legal title to the property at issue in this case (the "Property") when he entered into the loan transaction with LendingHome Funding Corporation ("LendingHome"), and because LendingHome and Tuesday Real Estate, LLC ("Tuesday") were respectively a bona fide mortgagee and a bona fide purchaser, I dissent from the majority's affirmance of the trial court's judgment (i) declaring the deed of trust Kevin executed in favor of LendingHome, as well as the substituted trustee's deed transferring the Property to Tuesday, void, (ii) vesting title to the Property in Kevin and his wife, Roxane Miller ("Roxane"), and (iii) awarding Tuesday money damages as against LendingHome.

**INFORMATION REGARDING PURPORTED CONVEYANCES
OF THE PROPERTY AFTER FORECLOSURE**

Having borrowed over $400,000 on the basis of a recorded deed showing title solely in Kevin's name, and with his sworn representation and warranty that (1) the proceeds of the loan would be used for business purposes only and (2) no homestead interests were effected by the loan,[1] Kevin, Roxane, and Kevin's mother, Harva Dale Miller ("Harva"), now challenge the resulting foreclosure sale, conducted after Kevin defaulted on the loan, asserting, contrary to Kevin's representations, (1) Kevin and Roxane have a homestead interest in the Property and (2) that Harva was the actual owner of the Property when LendingHome made the loan according to a deed said to be lost throughout the life of the loan and coincidentally discovered within days immediately following the foreclosure sale.

---

[1] More particularly, Kevin represented under oath:

> **The Property is/will not be owner-occupied**. The Property will not be occupied or claimed as a Primary or Secondary Residence by any of the Borrowers, and may produce revenue. Each Borrower(s) now owns, resides, uses and claims another property or properties as Borrower(s) Primary Residence.

In addition, Kevin acknowledged under oath:

> **Lender is originating the Loan in reliance upon the occupancy status indicated above. Should the occupancy status not be represented above**, and in consideration of Lender making the Loan, I/we hereby agree to indemnify Lender and hold lender harmless from and against any and all loss, damage, liability or expense, including costs and reasonable attorneys' fees . . . .

> **Borrower(s) also understands that any false statements, misrepresentations or material omissions may result in civil and criminal penalties.**

The agreements and covenants contained herein shall survive the closing of the Loan.

The following purported conveyances were then recorded in an attempt to vest title in Kevin and Roxane, post foreclosure free and clear of the encumbrance Kevin granted to LendingHome:

- On July 11, 2017, a purported conveyance from Delmo J. Johnson, Jr. Johnson") to Harva was recorded;

- On October 30, 2017, a purported conveyance from Kevin to Harva was recorded, after Kevin filed an affidavit stating that he had made a mistake including the Property in Johnson's Probate Estate;

- On October 1, 2018, a purported conveyance from Harva to Johnson Grain Company, Inc. was recorded; and

- On November 2, 2018, a purported conveyance from Johnson Grain Company, Inc. to Kevin and Roxane was recorded.

## DISCUSSION

Assuming, without conceding, the evidence is sufficient to support the trial court's finding the Property was the homestead of Kevin and Roxane,[2] I note that it was never intended by the framers of the Constitution that the homestead law should be used to defeat the rights of an innocent third party, who, in good faith, without notice, and for valuable consideration, acquired a valid lien against the property.

---

[2] Given Kevin's written representations in the operative loan documents, that contain a merger clause, disclaiming any homestead interest in the Property, his counter-representations in his affidavit concerning both his and his wife's intent are highly problematic. *Brannon v. Gulf States Energy Corp.*, 562 S.W.2d 219, 222 (Tex. 1977) (parole evidence of a different meaning than written words is legally no evidence); Despite its name, the parol evidence rule is "not a rule of evidence . . . but a rule of substantive law." *Hubacek v. Ennis State Bank*, 317 S.W.2d 30, 31 (1958). Evidence of a meaning different from the written words is not only excludable at trial but is legally no evidence at all. *Brannon*, 562 S.W.2d at 222. *See also North Clear Lake Dev. Corp. v. Blackstock*, 450 S.W.2d 678, 680 (Tex. App.—Houston [14th Dist.] 1970, writ ref'd n.r.e.) (attempt to vary terms of agreement violates statute of frauds); TEX. BUS. & COM. CODE ANN. § 26.02 (loan in excess of $50,000 subject to statute of frauds).

*Nat'l Bond & Mortg. Corp. v. Davis*, 60 S.W.2d 429, 434 (Tex. Comm'n App. 1933). In other words, if a lender takes a lien in good faith, for valuable consideration, and without actual or constructive notice of outstanding claims, it is a bona fide mortgagee. TEX. PROP. CODE ANN. § 13.001(a); *Houston First Am. Sav. v. Musick*, 650 S.W.2d 764, 769 (Tex. 1983). A bona fide mortgagee is entitled to the same protections at law as a bona fide purchaser. *Noble Mortg. & Invs., LLC v. D & M Vision Invs., LLC*, 340 S.W.3d 65, 76 (Tex. App.—Houston [1st Dist.] 2011, no pet.).

Notice sufficient to defeat bona fide mortgagee or purchaser status may be actual or constructive. *Flack v. First Nat'l Bank of Dalhart*, 226 S.W.2d 628, 631 (Tex. 1950). Actual notice rests on personal information or knowledge. *Madison v. Gordon*, 39 S.W.3d 604, 404 (Tex. 2001). Constructive notice is notice the law imputes to a person not having personal information or knowledge. *Id.* An example of constructive notice is where an instrument is properly recorded in the proper county. Under those circumstances, the recording is notice to all persons of the existence of the instrument. TEX. PROP. CODE ANN. § 13.002. Consequently, an unrecorded deed held outside the discoverable public chain of title does not impute constructive knowledge. *Noble Mortg.*, 340 S.W.3d at 76.

As to the deed purportedly conveying the Property from Johnson to Harva, the evidence conclusively established the deed was not recorded when LendingHome entered into the loan transaction with Kevin and no one alive, at that

–4–

time, other than the notary, was aware of the deed's existence until after the foreclosure sale. Clearly, LendingHome is a bona fide mortgagee as against Harva.

As to whether LendingHome is a bona fide mortgagee against claims asserted by Kevin and Roxane, the majority, citing article XVI, section 50 of the Texas Constitution, concludes, because the Property was Kevin and Roxane's homestead, LendingHome's lien on the Property is void and thus, reasons the majority, LendingHome was not a bona fide mortgagee. I respectfully disagree. Article XVI, section 50(d), still dealing with homesteads, provides:

> A purchaser or lender for value without actual knowledge may conclusively rely on an affidavit that designates other property as the homestead of the affiant and that states that the property to be conveyed or encumbered is not the homestead of the affiant.

TEX. CONST. art. XVI, § 50(d). Moreover, a lender is afforded equitable protection when it extends credit and obtains a lien without knowledge or the facts underling the purported homestead claim. *Patterson v. F.D.I.C.*, 918 F.2d 540, 546–47 (5th Cir. 1990); *Fuller v. Preston State Bank*, 667 S.W.2d 214, 217 (Tex. App.—Dallas 1983, writ ref'd n.r.e.).

Here, the record conclusively shows that Kevin represented in writing and under oath to LendingHome that he was not residing at the Property, would not reside at the Property,[3] and the loan was for commercial purposes.

---

[3] Appellant represented that he resided in Jacksonville, Texas.

Thus, pursuant to article XVI, section 50(d), LendingHome was entitled to rely on Kevin's representation and, as established by the testimony of Tuesday's representative discussed below, Kevin's disclosure of the fact that he was a married man, under the circumstances presented here, did not put LendingHome on notice of any homestead claim. At trial, Tuesday's representative established Tuesday is a sophisticated investor in real estate, the loan LendingHome made to Kevin was a commercial loan, commercial loans secured by single-family homes are made every day, and based upon its research, this Property did not appear to be a homestead and did not require Roxane's consent to validate LendingHome's lien.

Given this evidence, and the fact that LendingHome clearly gave valuable consideration for the lien, I would conclude LendingHome was a bona fide mortgagee and the trial court's finding to the contrary is not sustainable. Because LendingHome was a bona fide mortgagee, Tuesday was a bona fide purchaser at the foreclosure sale. *See Moran v. Adler*, 570 S.W.2d 883, 885 (Tex. 1978). Accordingly, I would sustain LendingHome's second and third issues challenging the trial court's findings on the bona fide mortgagee/purchaser issues and pretermit consideration of the trial court's findings on LendingHome's contingent counterclaims. TEX. R. APP. P. 47.1.

## CONCLUSION

Because I believe the record establishes LendingHome is a bona fide mortgagee and Tuesday is a bona fide purchaser, I would reverse the trial court's

judgment vesting title to the Property in Kevin and Roxane and awarding Tuesday money damages, and I would render judgment that title is vested in Tuesday. In light of that conclusion, I find it unnecessary to address LendingHome's contingent counterclaims.

Accordingly, I dissent from the majority's contrary decision.


/David J. Schenck/
DAVID J. SCHENCK
JUSTICE


200071DF.P05