

# Fourth Court of Appeals

## San Antonio, Texas

## OPINION

No. 04-14-00301-CV

**CITY OF SAN ANTONIO**,
Appellant

v.

Gerard **CORTES**,
Appellee

From the 285th Judicial District Court, Bexar County, Texas
Trial Court No. 2014-CI-05707
Honorable Laura Salinas, Judge Presiding

Opinion by:    Karen Angelini, Justice

Sitting:    Karen Angelini, Justice
        Marialyn Barnard, Justice
        Patricia O. Alvarez, Justice

Delivered and Filed:  April 29, 2015

REVERSED AND RENDERED

The City of San Antonio appeals the trial court's denial of its motion to abate and to compel arbitration. We reverse.

### BACKGROUND

In his amended petition, Appellee Gerard Cortes, a San Antonio firefighter, alleged that the current Collective Bargaining Agreement (CBA), which was agreed to by the City and the Union, sets forth health benefits for active San Antonio firefighters like Cortes. According to Cortes's petition, on or about April 2, 2014, he received a letter from his fire chief that described

a "dependent verification process" conducted by the City in order "to verify the eligibility of dependents on [Cortes's] medical benefit plan." The letter signed by the fire chief stated that the demand for dependent verification "should be considered a directive from [his] office" and that "full cooperation is expected." Cortes alleged that "[b]ecause the demand to provide the documentation is a 'directive,' the failure to follow this directive results in disciplinary actions, including suspension or termination." According to Cortes's petition, the directive by the fire chief "and the potential disciplinary action" exceeded the fire chief's statutory authority under section 143.051 of the Texas Local Government Code to discipline members of the San Antonio Fire Department. Further, Cortes alleged that by demanding verification of dependents, the City unilaterally altered his health benefits and thus (1) denied Cortes his right to organize and bargain collectively with his public employer regarding a condition of his employment in violation of section 174.023 of the Texas Local Government Code, and (2) breached the obligation to negotiate in good faith in violation of section 174.105. Cortes sought declaratory and injunctive relief.

In response to the lawsuit, the City filed a motion to abate and to compel arbitration. It later filed a supplement to its motion. The trial court denied the motion, and the City then filed this interlocutory appeal.

## STANDARD OF REVIEW

The CBA in this case is governed by the Federal Arbitration Act. *See City of San Antonio v. Int'l Ass'n of Fire Fighters, Local 624*, Nos. 04-12-00783-CV & 04-13-00109-CV, 2013 WL 5508408, at *3 (Tex. App.—San Antonio Oct. 2, 2013, no pet.). Generally, we review a trial court's ruling on a motion to compel arbitration for abuse of discretion, affording deference to the court's factual determinations, but reviewing legal questions de novo. *Garcia v. Huerta*, 340 S.W.3d 864, 868 (Tex. App.—San Antonio 2011, pet. denied). Thus, the existence and the applicability of an arbitration agreement is a question of law reviewed under a de novo standard.

*Id.* If the arbitration agreement includes the claims at issue and the opposing party cannot prove any defense preventing arbitration, "the trial court has no discretion but to compel arbitration and stay its own proceedings." *In re FirstMerit Bank*, 52 S.W.3d 749, 754 (Tex. 2001).

In order to succeed in its motion to compel arbitration, the City had to demonstrate that a valid arbitration agreement existed and that Cortes's claims fell within the scope of the agreement. *See J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003). In determining "whether a party's claims fall within an arbitration agreement's scope, we focus on the [petition]'s factual allegations rather than the legal causes of action asserted." *In re FirstMerit Bank*, 52 S.W.3d at 754. And, generally, any doubts about the scope of an arbitration agreement must be decided in favor of arbitration. *In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 782 (Tex. 2006).

Once the existence of a valid arbitration agreement is established, a strong presumption in favor of arbitration arises, *In re FirstMerit Bank*, 52 S.W.3d at 753, and "an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute," *Wright v. Universal Mar. Serv. Corp.*, 525 U.S. 70, 78 (1998) (citations omitted). To rebut this presumption, the party opposing arbitration bears the burden of raising an affirmative defense to enforcement of the agreement to arbitrate. *J.M. Davidson, Inc.*, 128 S.W.3d at 227; *see In re AdvancePCS Health L.P.*, 172 S.W.3d 603, 607 (Tex. 2005) (discussing affirmative defenses in context of arbitration agreements).

### DISCUSSION

The City argues that the trial court erred in denying its motion to compel arbitration because the doctrine of res judicata prevents Cortes from relitigating the issue of whether his claims should be referred to arbitration. The City emphasizes that Cortes's claims are identical to those already brought by the Union and are related to the same CBA. In *City of San Antonio v. International*

*Association of Fire Fighters, Local 624*, Nos. 04-12-00783-CV & 04-13-00109-CV, 2013 WL 5508408, at \*1 (Tex. App.—San Antonio Oct. 2, 2013, no pet.), the Union filed a lawsuit "alleging that the City had violated Chapter 174 of the Texas Local Government Code by unilaterally altering the prerequisites for health-insurance coverage of firefighters and their dependents without engaging in good-faith collective bargaining with the Union." Specifically, the Union alleged that "the City unilaterally changed the CBA's terms by: (1) requiring active enrollment in order for the firefighters to continue receiving health-care benefits; and (2) threatening termination of coverage for currently covered dependents unless the firefighters provide additional information." *Id.* The City filed a motion to compel, arguing that under the terms of the CBA, the Union's claims had to be compelled to arbitration. *Id.* After the trial court denied the motion and the City filed its interlocutory appeal, this court considered whether the Union's claims fell within the scope of the CBA's arbitration agreement. *Id.* at \*3.

This court then looked at the arbitration provision contained within the CBA, Article 30. *Id.* at \*4. Article 30 states the following:

> The purpose of this Article is to provide a just, equitable, and expeditious method for resolving disputes between the City and the Union (or employees) concerning all aspects of the employment relationship between the City and bargaining unit employees, and concerning the bargaining relationship between the City and the Union. To that end, the parties hereby agree and stipulate as follows:
>
> A. All disputes concerning the interpretation and/or application of the terms of this Agreement shall be submitted, if at all, to the grievance/arbitration procedure as called for herein. Failure to initially pursue grievance/arbitration in these instances shall be the basis for a plea in abatement in response to any suit or claim filed with a court of law and/or administrative agency.
>
> B. Employee claims of violation of statutory or constitutional rights may be submitted to the grievance/arbitration procedure or may be pursued by means of judicial and/or administrative appeal; provided that once the employee has elected to file a lawsuit and/or administrative claim, all issues raised by the dispute or

claim will be resolved in such lawsuit and/or administrative process, and no grievance may be filed concerning the same subject matter. It is recognized that claims falling under this subparagraph may be included with related claims of contract violations. In such circumstances, the City shall not be entitled to abatement of a suit involving the contract claims, related to the statutory or constitutional claims asserted, for failure to grieve such contract matters initially. If the employee elects to use the grievance/arbitration procedure to raise statutory or constitutional claims, such matters may not thereafter be appealed to court except as provided by this Article.[1]

This court noted that pursuant to this language, (1) disputes based on the "interpretation and/or application" of the CBA must be submitted to the arbitration procedure, and (2) "employees have the choice to pursue claims based on a statutory violation using either the arbitration procedure or a judicial forum, even if related contract claims are also made." *Id.*

In explaining why its claims did not fall within the scope of the arbitration agreement, the Union argued that its claims were not based on the interpretation or application of the CBA because it had not brought claims for violations of the CBA but was instead asking "the trial court to determine the meaning of provision of Chapter 174 and to declare a violation of those provisions." *Id.* at *6. This court, however, concluded that the Union's claims did fall within the scope of the arbitration agreement. *Id.* This court explained that when determining whether the Union's claims fell within the scope of the arbitration provision, "we focus on the complaint's factual allegations rather than the legal causes of action asserted." *Id.* at *5 (quoting *In re FirstMerit Bank*, 52 S.W.3d 749, 754 (Tex. 2001)). Because the Union sought "a judicial declaration that the City has, without authority, changed health-care benefit eligibility without bargaining collectively," a court could not "make such a declaration without first interpreting the current CBA provisions regarding

---

[1] Article 30 contains two other subparagraphs, C and D, which relate respectively to the filing of (1) employment discrimination claims and (2) disciplinary matters subject to the appeals procedure provided by chapter 143 of the Texas Local Government Code.

health-care benefits, and then determining whether the information or action required by the City alters or changes the CBA's current provisions." *Id.* This court thus concluded the Union's claims fell within the scope of the arbitration agreement. *Id.* Neither party appealed this court's decision and mandate issued. Thereafter, Cortes filed the underlying lawsuit containing the same allegations as the lawsuit filed by the Union. The City argued in its motion to abate and compel arbitration that because Cortes is in privity with the Union, he is bound by this court's holding in *City of San Antonio v. International Association of Fire Fighters, Local 624*, 2013 WL 5508408, at \*5, under the principles of res judicata and/or collateral estoppel, and cannot relitigate the issue of whether these claims can be resolved in a judicial forum or should be compelled to arbitration.

"Broadly speaking, res judicata is the generic term for a group of related concepts concerning the conclusive effects given final judgments." *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 628 (Tex. 1992). "Within this doctrine, there are two principal categories: (1) claim preclusion (also known as res judicata); and (2) issue preclusion (also known as collateral estoppel)." *Id.* "Res judicata, or claims preclusion, prevents the relitigation of a claim or cause of action that has been finally adjudicated, as well as related matters that, with the use of diligence, should have been litigated in the prior suit." *Id.* "Issue preclusion, or collateral estoppel, prevents relitigation of particular issues already resolved in a prior suit." *Id.* It "is designed to promote judicial efficiency and to prevent inconsistent judgments by preventing any relitigation of an ultimate issue of fact." *Texas Dep't of Public Safety v. Petta*, 44 S.W.3d 575, 579 (Tex. 2001). The City argues that the trial court erred in denying its motion to abate and compel arbitration in this case because the issue of whether these claims should be compelled to arbitration was already determined by our prior opinion.

Under both federal and Texas law, collateral estoppel applies when (1) the issue of fact or law sought to be litigated in the second action was fully and fairly litigated in the first action; (2)

that issue of fact or law was essential to the judgment in the first action; and (3) the party against whom the doctrine is asserted was a party or was in privity with a party in the first action. *See Taylor v. Sturgell*, 553 U.S. 880, 892 (2008); *Sysco Foods Servs., Inc. v. Trapnell*, 890 S.W.2d 796, 801-02 (Tex. 1994); *see also John G. & Marie Stella Kenedy Mem'l Found. v. Dewhurst*, 90 S.W.3d 268, 288 (Tex. 2002) (explaining elements of collateral estoppel under federal and Texas law are the same). With regard to the first element, the issue of whether the parties should be compelled to arbitration pursuant to the CBA was fully and fairly litigated in the first proceeding. *See International Association of Fire Fighters*, 2013 WL 5508408, at *1-*8. Cortes argues that he has brought one additional claim that was not brought by the Union in the first lawsuit. However, collateral estoppel "bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, *even if the issue recurs in the context of a different claim*." *Taylor*, 553 U.S. at 892 (citation omitted) (emphasis added). Thus, even though Cortes added a slightly different claim, it is based on the same facts as the first proceeding and collateral estoppel would still apply. *See Proctor v. Dist. of Columbia*, No. 13-00985, 2014 WL 6676232, at *6 (D.D.C. Nov. 25, 2014) (holding that teacher's claims, including one based on age discrimination, must be dismissed under collateral estoppel because even though the prior suit by the Union had contained no allegation regarding age discrimination, the teacher's age discrimination allegation simply "attempt[ed] to pour new wine into old wine skins," "precisely th[e] type of argumentation" "forbid[den]" by issue preclusion).

Secondly, that issue was essential to our judgment in the first appeal, and our judgment was not appealed. Cortes argues that there is not yet a final judgment on the merits with regard to the case brought by the Union. However, for purposes of collateral estoppel there need not necessarily be a final judgment on the merits. Instead, the test for finality is "whether the conclusion in question is procedurally definite." *Van Dyke v. Boswell, O'Toole, Davis &*

*Pickering*, 697 S.W.2d 381, 385 (Tex. 1985) (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 13, comment (g) (1982)). "The factors to be considered in answering this question include whether 'the parties were fully heard, [whether] the court supported its decision with a reasoned opinion [and whether] the decision was subject to appeal or was in fact reviewed on appeal.'" *Id.* (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 13, comment (g) (1982)) (alteration in original). In the prior case brought by the Union, the parties were fully heard at the trial court and at this court in the interlocutory appeal. And, because neither party filed a petition for discretionary review in the supreme court, mandate was issued. Thus, the prior appeal meets all these elements. So, while the merits of the case brought by the Union have not resulted in a final judgment, the issue of whether the parties should be compelled to arbitration is final for purposes of collateral estoppel.

Lastly, Cortes was in privity with the Union, the party in the first action, and is thus bound by this court's ruling in the first appeal that the parties should be compelled to arbitration under the CBA. Collateral estoppel may not be asserted against one who was not a party in the first case. *See Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 329 (1971). "The rules that identify the parties affected by issue preclusion . . . are often described as rules of 'privity' and 'mutuality.'" 18 Charles Alan Wright, FEDERAL PRACTICE & PROCEDURE: JURISDICTION § 4416 (2d ed.). "The term 'privity' signifies that the relationship between two or more persons is such that a judgment involving one of them may justly be conclusive upon the others, although those others were not party to the lawsuit." *Gill & Duffus Servs., Inc. v. A.M. Nural Islam*, 675 F.2d 404, 405 (D.C. Cir. 1982). Union members are considered to be in privity with their union for purposes of collateral estoppel. *See Hitchens v. Cnty. of Montgomery*, 98 Fed. Appx. 106, 114 (3d Cir. 2004) ("[C]ourts have held union members to be in privity with the union and have held that a decision against a union can bind union members in a subsequent action."); *Heade v. Wash. Metro. Area*

*Transit Auth.*, No. 09-02460, 2010 WL 938462, at *2 n.2 (D.C.C. 2010) ("Plaintiff's contention that the arbitration's findings do not bar her claim because she was not a party to that proceeding is also without merit . . . [because] she was in privity with her union."), *aff'd*, 2010 WL 3521596 (D.C. Cir. 2010) (affirming and stating appellant was in privity with the union). Thus, individual members of labor unions can be bound by judgments in suits brought by the union in its representative capacity. *Meza v. Gen. Battery Corp.*, 908 F.2d 1262, 1268 (5th Cir. 1990).

Because collateral estoppel prevents relitigation of the underlying issue in this appeal, we reverse the trial court's order on the City's motion to abate and to compel arbitration, render judgment granting the motion, and abate the underlying lawsuit "until the exhaustion of remedies provided for in this [CBA] have been completed to finality." *International Ass'n of Fire Fighters*, 2013 WL 5508408, at *8.

Karen Angelini, Justice